# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

WILLIAM COLEMAN,                          :
                                          :
                    Plaintiff,            :          Civ. No. 15-3539 (FLW) (LHG)
                                          :
          v.                              :
                                          :
ADAMS SCHNEIDER et al.,                   :          **OPINION**
                                          :
                    Defendants.           :
_____ :

### FREDA L. WOLFSON, U.S.D.J.

## I.      INTRODUCTION

Plaintiff, William Coleman ("Coleman" or "Plaintiff"), is a state prisoner confined at

South Woods State Prison, now represented by counsel, who filed this civil-rights complaint

under 42 U.S.C. § 1983. (Compl., ECF No. 1.) Presently before the Court is an unopposed

motion by defendants, Adam Schneider ("Schneider"),[1] Jason Roebuck ("Roebuck"), Nicholas

Romano ("Romano"), J. Bard ("Bard"), F. Passantino ("Passantino"), T. Hueston ("Hueston"), F.

Sanders ("Sanders"), J. Gant ("Gant"), B. Dinero ("Dinero"), R. Poss ("Poss"),[2] S. Chapparo

("Chapparo"), G. Olski ("Olski"), and the City of Long Branch ("the City") (collectively,

"Defendants"), for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Mot.,

ECF No. 15.) For the following reasons, the motion is GRANTED.

_____

[1]  Improperly pled as "Adams Schneider."

[2]  Improperly pled as "R. Ross."

## II.    BACKGROUND

### A.  Underlying Facts and Allegations[3]

On March 18, 2015, Coleman was riding as a passenger in a vehicle in Long Branch, New Jersey, which was pulled over by officers of the Long Branch Police Department.  (ECF No. 1, ¶ 22; Statement of Undisputed Material Facts, ECF No. 15-2, ¶¶ 1–3.)  Coleman alleges that when the vehicle was pulled over he thought "he was being setup" because of "his history with Long Branch Police Department and their threats against his life and use of excessive force against him."  (ECF No. 1 ¶ 22.)  Coleman began to run away, but fell while trying to climb over a fence.  (*Id.* ¶¶ 22–23; ECF No. 15-2 ¶¶ 3–5.)  He asserts that Romano then began, "without provocation," beating him, and that other defendants Bard, Passantino, Hueston, Sanders, Gant, Dinero, Poss, Chapparo, Olski, and two John Doe defendants soon "deliberately ran up to plaintiff and started beating and stumping [sic] him until he lost consciousness, causing serious and permanent bodily and psychological injuries."  (ECF No. 1 ¶ 23.)  Coleman also alleges that these defendant officers "repeatedly used racial slurs and insults."  (*Id.* ¶ 24.)

Coleman alleges that he awoke in Monmouth Medical Center Hospital with a broken nose, black eyes, facial swelling, and other injuries.  (*Id.*)  He asserts that he was then taken to the Long Branch Police Department, where he was put in a holding pen without receiving a phone call, where he was deprived of food, as well as socks and shoes.  (*Id.* ¶¶ 25–26.)  He claims that officers, and specifically Chapparo, taunted him and declined or ignored his requests for medical attention, before he was "maliciously, abusively, and wrongfully" charged with possession of a controlled dangerous substance ("CDS").  (*Id.* ¶¶ 26–27.)  Coleman avers that it

---

[3]  Defendants' motion included, as required by Local Civil Rule 56.1, a Statement of Undisputed Material Facts.  (ECF No. 15-2.)  As Coleman filed no opposition to Defendants' motion and no response to their Statement of Undisputed Material Facts, the facts recited therein are deemed undisputed.  *See* L. Civ. R. 56.1(a).

was not until he was transferred to Monmouth County Correctional Institution that he received any further medical attention.  (*Id.* ¶ 28.)

**B. Procedural History**

On May 26, 2015, Coleman, acting *pro se*, filed a Complaint claiming that Defendants violated his constitutional rights, in contradiction of 42 U.S.C. § 1983.  (ECF No. 1.)  Coleman alleges that Schneider, the mayor of Long Branch, Roebuck, its police chief, and the City itself "have implemented and enforced a practice, policy, and custom of stopping, frisking, searching, and detaining citizens, without legal justification, probable cause, or reasonable suspicion of criminal conduct," which caused him injuries.  (*Id.* ¶¶ 47–48.)  He further alleges that Schneider, Roebuck, and the City had known that the defendant-officers had "unlawfully, intentionally, willfully, maliciously, recklessly, and violently beaten other innocent African-American men, women, and children in Long Branch because those citizens filed complaints and lawsuits against Defendants," (*id.* ¶ 31), and "were deliberately indifferent to the need to properly train, supervise, audit, and discipline all the individually named police officers under their command in areas involving citizens' constitutional rights," (*id.* ¶ 53; *see also id.* ¶¶ 30–45).  The Complaint demanded declaratory judgment and compensatory damages of at least $10 million, plus punitive damages, attorney's fees, and costs.  (*Id.* ¶¶ 58–61.)

Upon an initial screening of the Complaint, under 28 U.S.C. § 1915(e)(2)(B), the Court construed it as asserting § 1983 claims against the defendant-officers for excessive force, false arrest, false imprisonment, and malicious prosecution, in violation of the Fourth Amendment, as well as retaliation and conspiracy.  (Order, ECF No. 3, ¶ 10.)  The Court found that the Complaint also contrued a claim against Chapparo for deliberate indifference to a serious medical need, in violation of the Due Process Clause of the Fourteenth Amendment.  (*Id.*)

Additionally, the Court construed the Complaint as asserting claims of supervisory and *Monell* liability against Schneider, Roebuck, and the City for deficient policies or customs, failure to train or supervise, and class-based discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶ 11.) The Court dismissed the malicious-prosecution claim for failure to plead favorable termination, as well as the claims against Defendants in their official capacities, but permitted the remainder of the Complaint to proceed. (*Id.* ¶ 12.)

Defendants answered the Complaint on December 1, 2015.[4] (Ans., ECF No. 9.) The Honorable Lois H. Goodman, U.S.M.J., then issued a Pretrial Scheduling Order directing the parties to complete all discovery by April 20, 2016 and file all dispositive motions by May 13, 2016. (Order, ECF No. 12.)

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Presently pending before the Court is a motion by Defendants for summary judgment on all claims.[5] (ECF No. 15.) When Coleman did not timely oppose the motion, the Court gave him additional time to do so, but warned that, otherwise, the motion would be decided as unopposed. (Order, ECF No. 17.) Subsequently, attorney Ronald J. Brandmayr entered an appearance on Coleman's behalf. (Notice of Appearance, ECF No. 22.) The Court again granted Coleman extra time to oppose the pending motion. (Mem. & Order, ECF No. 23.) Despite subsequently granting Coleman a third opportunity to oppose summary judgment, (Letter Order, ECF No. 28), no opposition to the motion was ever filed.

---

[4] Defendants subsequently filed an Amended Answer. (Am. Ans., ECF No. 14.)

[5] For the sake of clarity, Defendants' arguments in support of summary judgment are discussed in conjunction with the analysis below.

## A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 permits a court to award a party summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if supported by evidence such that a reasonable jury could return a verdict in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251–52 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Kaucher v. County of Bucks*, 455 F.3d 418, 422–23 (3d Cir. 2006). A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Kaucher*, 455 F.3d at 423. In determining whether a genuine dispute of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-movant]." *Matsushita*, 475 U.S. at 587.

A movant for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). While a defendant moving for summary judgment must support assertions by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), the movant is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex Corp.*, 477 U.S. at 323. Instead, "the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the movant has shown an absence of material factual dispute, the non-movant then bears the burden to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). Moreover, the non-movant may not rest upon the mere allegations or denials of the pleadings. *Id.* at 324;

*Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994), *aff'd* 67 F.3d 291 (3d Cir. 1995). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A mere "scintilla of evidence . . . will be insufficient." *Anderson*, 477 U.S. at 252.

Local Civil Rule 56.1 requires that a motion seeking summary judgment include a statement of material facts not in dispute, and that an opponent of summary judgment shall file "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." L. Civ. R. 56.1(a). The rule further provides that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." *Id.* Although a motion for summary judgment may not be granted by default, merely because it goes unopposed, *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990), the motion may be granted if the undisputed facts warrant judgment as a matter of law, *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003); *Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 723 (D.N.J. 2013), *aff'd* 559 F. App'x 139 (3d Cir. 2014).

Defendants have submitted a Statement of Undisputed Material Facts that includes citations to relevant exhibits. (*See* ECF No. 15-2.) As Coleman has filed no opposition to the motion, despite ample opportunity to do so, the facts included in Defendants' Statement of Undisputed Material Facts are deemed undisputed for the purposes of resolving this motion. *See* L. Civ. R. 56.1.

**B. Section 1983 Generally**

42 U.S.C. § 1983 is the statutory basis for asserting violations of a plaintiff's constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

**C. False Arrest and False Imprisonment**

The Fourth Amendment of the Constitution of the United States guarantees a right to be free from unreasonable seizures. U.S. Const. amend. IV. A seizure occurs when a government official restrains a person's freedom of movement such that the person is deprived of his/her free will to leave. *Brendlin v. California*, 551 U.S. 249, 254 (2007). A seizure is generally permissible only if it is supported by probable cause to believe the person has committed a crime. *Bailey v. United States*, 568 U.S. 186, 192 (2013).

A claim for false arrest thus requires that the plaintiff show (1) an arrest and (2) that the arrest was made without probable cause. *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d

Cir. 2012). Similarly, a claim for false imprisonment requires a showing that (1) the plaintiff was detained, and (2) the detention was unlawful. *Id.* at 682–83. Indeed, when a person is arrested without probable cause, a claim for false imprisonment may be asserted as to the detention following that arrest. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995); *see also Manuel v. City of Joliet*, 137 S. Ct. 911, 919 (2017).

Defendants argue that summary judgment is appropriate as to Coleman's claims for false arrest and false imprisonment because, the record shows that probable cause existed to arrest him. (Br. in Supp., ECF No. 15-1, at 4–5.) For support, the Statement of Undisputed Material Facts, with citations to attached reports from the officers involved in the incident, recites the following:

1. Romano pulled over a pickup truck for failure to signal a turn.

2. Non-party Gary Coleman exited the vehicle and attempted to engage Romano in conversation, but Romano ordered Gary Coleman to return to the truck.

3. Plaintiff William Coleman then exited the vehicle and began running away.

4. Romano yelled "POLICE STOP," but Coleman continued running.

5. Romano ran after Coleman, yelling several more times for him to stop.

6. Romano caught Coleman, but he attempted to break free by punching Romano's hands and trying to pry them open.

7. Romano and Coleman fell to the ground, and Coleman then attempted to grab Romano's handgun and remove it from its holster.

8. Romano punched Coleman in the face, who then let go of the gun and rolled onto his stomach with his hands under him.

9.  Romano unsuccessfully attempted to pull Coleman's hands out from under him, including by punching Coleman on the side.

10. Two additional officers[6] then arrived and helped Romano handcuff Coleman and place him under arrest.

(ECF No. 15-2 ¶¶ 2–8.)  The Court further notes that Romano's report from the incident indicates that Romano instructed Coleman that he was under arrest once he was pulled off the fence that he was trying to climb over.  (ECF No. 15-4 at ECF p. 5.)  As noted above, the Court will deem these facts undisputed for the purposes of this motion.

Defendants contend that Romano and the other officers specifically had probable cause to arrest Coleman for the crime of resisting arrest.  (*See* ECF No. 15-1 at 4–5.)  Under New Jersey Statutes Annotated § ("N.J.S.A.") 2C:29-2, a person commits resisting arrest if that person "purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest," and the offense level is enhanced if the resistance takes the form of flight, physical force, or violence.[7]  *See* N.J.S.A. 2C:29-2(a).  The undisputed facts make it clear that the officers had probable cause to arrest Coleman for resisting arrest, under N.J.S.A. 2C:29-2(a), after Romano told Coleman he was under arrest and Coleman punched Romano's hands and attempted to grab Romano's gun.  (*See* ECF No. 15-2 ¶¶ 4–8.)

To the extent that Coleman challenges the brief seizure that may have occurred before probable cause for resisting arrest accrued, the Court finds any such seizure justified.  While the

---

[6] These two officers are not specifically identified in the Statement of Undisputed Material Facts.

[7] The Court notes that under the resisting-arrest statute "[i]t is not a defense to a prosecution under this subsection that the law enforcement officer was acting unlawfully in making the arrest, provided he was acting under color of his official authority and provided the law enforcement officer announces his intention to arrest prior to the resistance."  N.J.S.A. 2C:29-2(a); *see also State v. Mulvihill*, 57 N.J. 151, 155–156 (1970).

Court of Appeals for the Third Circuit has established that a passenger's attempt to flee from a vehicle stop alone gives rise to reasonable suspicion to conduct an investigatory stop of that fleeing passenger, this does not necessarily create probable cause for an arrest. *United States v. Bonner*, 363 F.3d 213, 218 (3d Cir. 2004); *see also United States v. Edmonds*, 606 F. App'x 656, 659–60 (3d Cir. 2015); *United States v. Richardson*, 504 F. App'x 176,181–82 (3d Cir. 2012). Nonetheless, the probable-cause inquiry is an objective one: "an arresting officer's state of mind (except for the facts that he knows) is irrelevant" and probable cause for an arrest will be found "as long as the circumstances, viewed objectively, justify that action." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (internal quotation marks omitted). Thus, even if probable cause could not properly accrue from the offense cited by the arresting officer, the arrest may still be justified so long as a reasonable officer in the circumstances would have had probable cause to make an arrest for *some* offense. *See id.*; *see also United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007); *Johnson v. Knorr*, 477 F.3d 75, 84–85 (3d Cir. 2007); *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006).

Though Romano did not identify this offense as the basis for the arrest, the undisputed facts make clear that, once Coleman ran from the traffic stop, an objectively reasonable officer would have had probable cause to arrest Coleman for Obstructing Administration of Law or Other Governmental Function ("Obstruction"), under N.J.S.A. 2C:29-1. Under that statute, an offense occurs if a person "attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle." N.J.S.A. 2C:29-1(a). Applying the law to circumstances very similar to those considered herein, the Supreme Court of New Jersey affirmed a conviction for Obstruction, noting even that "a defendant may be convicted of obstruction under *N.J.S.A.* 2C:29-1 when he

flees from an investigatory stop, despite a later finding that the police action was unconstitutional." *State v. Crawley*, 187 N.J. 440, 452–61 (2006), *cert. denied sub nom. Crawley v. New Jersey*, 549 U.S. 1078 (2006). Thus when Coleman fled the investigatory stop, there existed both reasonable suspicion to stop him, under the Third Circuit's holding in *Bonner*, and probable cause to arrest him for Obstruction, under the New Jersey Supreme Court's holding in *Crawley*. These findings of course preclude any recovery on Coleman's claim for false arrest, and consequently the claim for false imprisonment also fails. Accordingly, summary judgment will be granted dismissing these claims.

### D.  Excessive Force

The Fourth Amendment also protects the right of those seized by law enforcement not to be subjected to excessive force. *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *Groman*, 47 F.3d at 633–34. While the power to effect an arrest or investigatory stop includes the implicit right to use some degree of physical force, such force must be reasonable, as determined with "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted); *see also Groman*, 47 F.3d at 634. This fact-intensive inquiry includes examination of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *Groman*, 47 F.3d at 634. Other relevant factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*,

128 F.3d 810, 822 (3d Cir. 1997). The overall analysis is objective and does not entail examination of the seizing officer's motives, with the operative question being whether the officer's exercise of force was objectively reasonable in light of the circumstances presented. *Graham*, 490 U.S. at 397; *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).

The facts relevant to Coleman's excessive-force claim presently before the Court are as follows:

1. Romano grabbed the fleeing Coleman as he was attempting to climb over a fence, and pulled him down.

2. Coleman attempted to break free by punching Romano's hands and trying to pry them open.

3. Romano and Coleman fell to the ground, and Coleman then attempted to grab Romano's handgun and remove it from its holster.

4. Romano then rolled Coleman onto his back and punched him "several times" in the face, after which Coleman let go of the gun and rolled onto his stomach with his hands under him.

5. Romano unsuccessfully attempted to pull Coleman's hands out from under him, including by "repeatedly" punching Coleman on the side, but was unable to extract his hands.

6. Two additional officers then arrive and helped Romano handcuff Coleman and place him under arrest.[8]

(ECF No. 15-1 ¶¶ 5–8; ECF No. 15-4 at ECF p. 5.)

---

[8] As the Statement of Undisputed Material Facts does not identify which two officers aided Romano in arresting Coleman, the claim for excessive force will be considered as asserted against all defendant-officers.

Taking the facts proffered by Defendants as true, the Court does not find that any reasonable jury could conclude that the force employed against Coleman was excessive. It does not appear that Coleman has based his excessive-force claim on Romano's conduct of grabbing Coleman and pulling him off of a fence. Rather, once Coleman started grabbing Romano's firearm, Romano had legitimate reason to fear for the safety of himself and others, and it appears that he was justified in exercising reasonable force—in this case, striking Coleman's face—in order to restrain Coleman from grabbing for the gun. Indeed, the Third Circuit has found that a police officer is reasonable in employing up to deadly force against a person attempting to seize the officer's gun. *See Johnson v. City of Phila.*, 837 F.3d 343, 350 (3d Cir. 2016) (referring to it as "a proposition that can scarcely be disputed").

Similarly, Romano was justified in striking Coleman on his torso in an effort to retrieve Coleman's hands, which were placed underneath his body, so Coleman could be handcuffed. Indeed, Coleman had fled from a traffic stop and had attempted to grab Romano's gun, thus, the force used to secure Coleman was reasonable under the circumstances. Furthermore, there is no indication that Romano had any opportunity prior to that moment to frisk Coleman for weapons or other dangerous objects. Accordingly, Coleman still presented a potential risk to public safety, and he was actively attempting to resist or evade arrest.[9] *See Graham*, 490 U.S. at 396. Based on the undisputed facts before the Court, it was reasonably necessary for Romano and the other defendant-officers to use force to effect Coleman's arrest. The portion of Defendants' motion seeking summary judgment dismissing Coleman's excessive-force claims will accordingly be granted.

---

[9] The Court notes that, within the Third Circuit, courts consider the reasonableness of the use of force in light of all relevant facts and circumstances surrounding it—not just the circumstances at the moment of arrest. *See Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).

### E. Deliberate Indifference

An incarcerated plaintiff may assert a § 1983 claim for violation of the Eighth Amendment where institutional staff have provided inadequate medical care. *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993); *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976); *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A pretrial detainee, though not within the scope of the Eighth Amendment, may assert the same type of claim, with the same standard of review, under the Due Process Clause of the Fourteenth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581–82 (3d Cir. 2003). A plaintiff asserting a § 1983 claim for inadequate medical care must show the existence of a serious medical need and that facility staff demonstrated deliberate indifference to that medical need. *Pearson*, 850 F.3d at 534; *Mattern v. City of Sea Isle*, 657 F. App'x 134, 138 (3d Cir. 2016); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009); *Natale*, 318 F.3d at 582. The Court of Appeals for the Third Circuit has stated that "a medical need is 'serious' for purposes of a denial of medical care claim if it is either 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Mattern*, 657 F. App'x at 139 (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

A finding of deliberate indifference requires demonstrating that the defendant had the requisite state of mind, i.e., knowledge of a serious medical risk and disregard for that risk. *See Parkell v. Danberg*, 833 F.3d 313, 335, 337 (3d Cir. 2016); *Natale*, 318 F.3d at 582; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (finding that an Eighth Amendment violation requires a showing of "obduracy and wantonness"); *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (equating deliberate indifference with at least "reckless[] disregard [for] a substantial

risk of serious harm.").  "[T]he deliberate indifference standard 'affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients . . . ."  *Pearson*, 850 F.3d at 538; *see also Palakovic*, 854 F.3d at 227; *Parkell*, 833 F.3d at 337.  The Third Circuit has identified a variety of forms that deliberate indifference may commonly take, including:  "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'"  *Parkell*, 833 F.3d at 337 (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Natale*, 318 F.3d at 582.  A mere "inadvertent failure to provide adequate medical care"—i.e., negligent diagnosis or treatment—will not create an Eighth Amendment claim.  *Estelle*, 429 U.S. at 105–06; *Parkell*, 833 F.3d at 337.

Defendants argue that summary judgment must be granted as to Coleman's deliberate indifference claim because Coleman "has provided no evidence that he required immediate treatment, or that Officer Chapparo was aware of such at the time of his involvement with [Coleman.]"  (ECF No. 15-1.)  Defendants submit no evidence directly relevant to this claim. Nevertheless, as noted above, the Supreme Court has found that it is *not* required for a defendant moving for summary judgment to "produce evidence showing the absence of a genuine issue of material fact," but that the movant meets its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  Here, Defendants meet that burden by pointing out to the Court that, despite the close of the original discovery period, and despite ample opportunity to submit evidence to the Court in opposition to this motion, Coleman has not produced or submitted any evidence supporting his claim for deliberate indifference.  The Third Circuit has affirmed a grant

of summary judgment to a defendant under similar circumstances. *See Hakeem v. Salaam*, 260 F. App'x 432, 434–35 (3d Cir. 2008) ("Although Hakeem claims that his repeated complaints of throat pain went completely ignored, he cannot rest upon mere unsupported allegations when faced with a motion for summary judgment."). The Court finds no basis to reach a different result in this case, and summary judgment will be granted dismissing this claim.

## F. Conspiracy

A § 1983 claim for civil-rights conspiracy must show a "meeting of the minds" with facts demonstrating agreement and concerted action. *See Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008). Defendants contend that Coleman has failed to establish any facts supporting a conspiracy claim against them. (ECF No. 15-1 at 17–18.) The Court agrees. The only conspiracy-related allegations in the Complaint are the conclusory assertions that Coleman was "wrongfully charged with a crime of possession of CDS as part of a cover-up by Defendants [Romano] and John Doe 1–8" and that other defendants acted "in unlawful concert and agreement with [Romano] to cover-up [their] conduct." (ECF No. 1 ¶¶ 26, 29.) Coleman has thus shown no facts establishing agreement and concerted action, and, thus, summary judgment will be granted as to the conspiracy claim.[10]

## G. Deficient Policies and Customs or Failure to Train and Supervise

Generally, personal involvement by the defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of *respondeat superior*. *See*

---

[10] The Court initially construed Coleman's complaint as asserting a claim for retaliation. An incarcerated plaintiff pleads a claim for retaliation by alleging that "(1) he engaged in constitutionally protected conduct[,] (2) he suffered an adverse action[,] and (3) the constitutionally protected conduct was a substantial or motivating factor for the adverse action." *Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017) (internal quotation marks omitted); *see also Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001). Coleman has pleaded no specific facts and submitted no evidence to support a claim for retaliation under § 1983, and, therefore, that claim is dismissed.

*Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability

generally requires some affirmative conduct by the supervisor, such as a supervisor's

implementation or maintenance of a policy, practice, or custom that harmed the plaintiff.

*Parkell*, 833 F.3d at 330; *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).

Thus, a person who has final policy-making authority may be held liable under § 1983 if that

person establishes a policy that is unconstitutional and that injures the plaintiff. *Chavarriaga*,

806 F.3d at 223; *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

"[T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and

prove that the official established or enforced policies and practices directly causing the

constitutional violation." *Chavarriaga*, 806 F.3d at 223. Alternatively, supervisory liability may

be shown where the plaintiff is able to

> "(1) identify the specific supervisory practice or procedure that the
> supervisor has failed to employ, and show that (2) the existing
> custom and practice without the identified, absent custom or
> procedure created an unreasonable risk of the ultimate injury, (3)
> the supervisor was aware that this unreasonable risk existed, (4)
> the supervisor was indifferent to the risk, and (5) the underling's
> violation resulted from the supervisor's failure to employ that
> supervisory practice or procedure."

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001); *see also Barkes v. First Corr.*

*Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*,

135 S. Ct. 2042 (2015).

A distinct form of supervisory liability may also accrue based on the failure to properly

train employees to avoid violating constitutional rights. *See Connick v. Thompson*, 563 U.S. 51,

61 (2011); *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). To find such liability,

however, the failure to train must amount to "deliberate indifference to the rights of persons with

whom the [untrained employees] come into contact." *City of Canton*, 489 U.S. at 388; *see also*

*Connick*, 563 U.S. at 61; *Thomas*, 749 F.3d at 222–23. A plaintiff must establish deliberate indifference with proof that the defendant ignored a known or obvious result, and therefore that the defendant had "notice that a course of training is deficient in a particular respect." *Connick*, 563 U.S. at 62; *Wright v. City of Phila.*, 685 F. App'x 142, 147 (3d Cir. 2017), *cert. denied* 138 S. Ct. 360 (2017); *Thomas*, 749 F.3d at 223. The alleged training deficiencies must also be so "closely related" to the injury ultimately inflicted upon the plaintiff as to have been an actual cause of the harm. *City of Canton*, 489 U.S. at 391; *Thomas*, 749 F.3d at 222.

Similarly, municipal liability under § 1983, as permitted by *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), requires affirmative conduct by the municipality and cannot accrue based solely on vicarious liability. *See Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35–36 (2010); *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 174–75 (3d Cir. 2017); *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). "A municipality is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation." *Mann*, 872 F.3d at 175; *see also Thomas*, 749 F.3d at 222; *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009). Liability may also exist on a *Monell* claim based on a municipal defendant's failure to properly train employees to avoid violating constitutional rights. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Defendants argue that Coleman has not proffered any evidence of an unlawful policy, practice, or decision that led to the alleged constitutional violations. (ECF No. 15-1 at 11.) They further contend that Coleman has not identified any history of rights violations that should have put the City or supervisory defendants on notice of a similar issue raised in this case. (*Id.* at 11.)

They further argue that Coleman's claims against Schneider and Roebuck allege no personal involvement and are based purely upon *respondeat superior*. (*Id.* at 13–14.)

Defendants are correct that Coleman has provided no evidence as to a specific policy or practice, or a failure to train or supervise, that brought about the alleged constitutional violations. Although the Complaint makes conclusory allegations that the City, Schneider, and Roebuck have a policy or practice of wrongfully arresting citizens, and that they have known that the defendant-officers have a history of beating "other African-American men, women and children," there is no evidence before the Court to support any of these assertions. More importantly, as the Court has found no evidence supporting claims that Coleman's constitutional rights were violated, there may be no supervisory liability, as there are no violations in which Schneider, Roebuck, or the City could have played a role. *See Sanders v. Jackson Twp. Police Dep't*, Civ. No. 10-6305 (PGS), 2011 WL 3438867, at *6 (D.N.J. Aug. 4, 2011); *Campbell v. Gibb*, Civ. No. 10-6584 (JBS), 2011 WL 2669965, at * (D.N.J. July 7, 2011). Accordingly, summary judgment is granted, dismissing the claims for deficient policies and customs and for failure to train or supervise.

### H. The Equal-Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The Supreme Court has described this as "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). An equal-protection claim thus requires a showing that (1) the plaintiff is a member of a protected class and (2) the plaintiff was treated differently from others similarly situated. *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002); *see also Johnson v. Fuentes*,

704 F. App'x 61, 65 (3d Cir. 2017); *Kazar v. Slippery Rock Univ.*, 679 F. App'x 156, 162 (3d Cir. 2017); *Shuman ex rel. Shertzer v. Penn. Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005). Persons are considered similarly situated when they are "alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation marks omitted).

A successful claim requires proof that the plaintiff was subjected to intentional or purposeful discrimination. *Hassan v. City of N.Y.*, 804 F.3d 277, 294 (3d Cir. 2015); *Shuman*, 422 F.3d at 151. A plaintiff must show discriminatory purpose by demonstrating that the defendant took the challenged action "at least partially because the action would benefit or burden an identifiable group." *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 548 (3d Cir. 2011) (citing *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009) (finding that stating discrimination claim requires pleading facts that show challenged policy was adopted "not for a neutral, investigative reason but for the purpose of discriminating"). "Thus, the mere awareness or consideration of race should not be mistaken for racially discriminatory intent or for proof of an equal protection violation." *Doe*, 665 F.3d at 548.

Defendants argue that Coleman has failed prove that they purposefully discriminated against him. (ECF No. 15-1 at 18–20.) They urge that Coleman has presented no evidence "to show that his treatment was arbitrary or that even one similarly situated individual was treated differently." (*Id.* at 19.)

There is no doubt that Coleman, being African American, would be considered a member of a protected class. *See, e.g.*, *Jones v. Dalton*, 867 F. Supp. 2d 572, 583 (D.N.J. 2012). Nevertheless, there is no evidence before the Court to support any of the other elements of an equal-protection claim. There is simply no evidence that Coleman was treated differently from

similarly situated persons of other races.  Nor are there any facts showing that the alleged differential treatment was a product of purposeful discrimination.  Accordingly, summary judgment is granted on this claim.

## I.   Other Arguments

Defendants have also argued that summary judgment should be granted dismissing the punitive damages claims against the City, that the Complaint should be stricken as penalty for Coleman's failure to participate in discovery, and that this action should be stayed pending the resolution of Coleman's criminal proceeding.  (ECF No. 15-1 at 20–31.)  As the Court has found that summary judgment is granted, dismissing each of Coleman's claims, the Court need not consider the merits of these other arguments.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' unopposed motion for summary judgment dismissing the Complaint in this action, (ECF No. 15), is GRANTED, and all claims in the Complaint are dismissed with prejudice.  An appropriate order follows.


DATED:  June 14, 2018                                              /s/ Freda L. Wolfson
                                                                              FREDA L. WOLFSON
                                                                              United States District Judge